1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT
                          WESTERN DISTRICT OF WASHINGTON
9                                    AT SEATTLE

10   LEDCOR INDUSTRIES (USA) INC., a               CASE NO. C09-1807RSM
     Washington corporation,
                                                   ORDER ON MOTIONS FOR
11                                                 SUMMARY JUDGMENT
                         Plaintiff,
12
              v.
13   VIRGINIA SURETY COMPANY, INC.,
     a foreign corporation, et al.,
14
                         Defendants.
15

16                              I.  **INTRODUCTION**

17          This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment

18   Against Defendant Virginia Surety Company, Inc. for Insurance Bad Faith, Dkt. # 140

19   ("Plaintiff's Motion 1"), Plaintiff's Motion for Summary Judgment Against Defendant Virginia

20   Surety Company, Inc. for Breach of Insurance Contract, Violations of Washington's Consumer

21

22   Protection Act, and Violations of the Insurance Fair Conduct Act, Dkt. # 168 ("Plaintiff's

23   Motion 2"), and Defendant's Motion for Summary Judgment.  Dkt. # 166 ("Defendant's

24

Motion"). The Court has reviewed Plaintiff's Motion 1, Plaintiff's Motion 2, Defendant's

Motion, and all documents submitted in support thereof. For the reasons set forth below, the

Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion 1, DENIES Plaintiff's

Motion 2, and GRANTS IN PART and DENIES IN PART Defendant's Motion.

## II. BACKGROUND

A.     Chronology of Events

This case arises out of an insurance contract between Plaintiff Ledcor Industries (USA),

Inc. ("Ledcor" or "Plaintiff") and Defendant Virginia Surety Company, Inc. ("Virginia" or

"Defendant"). Ledcor is a general contractor who built a mixed-use real estate project in West

Seattle – commonly referred to as the Adelaide Project – that includes both condominiums and

townhomes. Ledcor was hired to build the Adelaide Project by West Seattle Property, LLC

("WSP"), the owner and developer of the property. Ledcor purchased an insurance policy from

Virginia relating to the Adelaide Project covering the period of December 1, 2003 through

December 1, 2004. Dkt. # 40 (Samuelson Decl., Ex. 5 (the "Policy")). The Policy imposes both

defense and indemnity obligations upon Virginia and is subject to a number of exclusions. *Id.*

In August of 2005, following completion of the Adelaide Project, the homeowners

associations for both the townhomes and condominiums (collectively, the "HOAs") advised

Ledcor of various defects in the building, and Ledcor in turn notified Virginia of the HOAs'

potential claims. Dkt. # 141 (McGillis Decl., Ex. 1 (General Liability Report Forms)). Virginia

responded by requesting documents and information from Ledcor, including a list of the alleged

construction defects, which Ledcor provided shortly thereafter. *Id.*, Ex. 6 (Letter and

Attachments from Ledcor's Counsel). In response to one such request, Ledcor's counsel sent an

ORDER - 2

1  email to Virginia in which he stated that a "disagreement" existed as to the date that Ledcor

2  achieved "substantial completion" of the Adelaide Project and that "[i]f it were possible to

3  establish the date [of substantial completion] it would fall between August 2003 and November

4  2003." *Id*., Ex. 7 (Email dated September 6, 2005).[1]

5         On February 21, 2006, Virginia sent a letter to Ledcor denying coverage. *Id*. (McGillis

6  Decl., Ex. 12 ("Denial Letter")).  As a threshold matter, Virginia took the position that its duty to

7  defend Ledcor applied only with respect to a "suit" for damages, and that its duty to indemnify

8  applied only with respect to damages Ledcor became "legally obligated to pay." *Id*., at 1.  Since

9  no such suit had yet been filed by either of the HOAs, and because Ledcor had not become

10  legally obligated to pay any damages, Virginia took the position that "there is not yet any duty to

11  defend" or indemnify.  *Id*.

12         Relying upon two exclusions contained in the Policy, Virginia also concluded that, even

13  in the event a "suit" had been filed, "there is no potential coverage for this loss." *Id*.  First,

14  Virginia relied upon the Policy's "Progressive, Continuous or Intermittent 'Property Damage'

15  Exclusion" (the "Progressive Loss Exclusion") – a provision that generally excludes coverage for

16  damages that occurred prior to commencement of the Policy.  *Id*.  Virginia took this position

17  based upon Ledcor's previous statements that the Adelaide Project had been "substantially

18  completed" ten days prior to commencement of the Policy.  Second, Virginia relied upon the

19  Policy's "Fungus Exclusion," which generally excludes coverage for damage caused by mold or

20

21  [1] The "disagreement" to which Ledcor's counsel referred arose in the context of a separate
    litigation between Ledcor and WSP involving a contract dispute (the "WSP Litigation").  In the
22  WSP Litigation, Ledcor took the position that the date of substantial completion was October 24,
    2003, and WSP took the position that the date of substantial completion was November 21, 2003.
23  *Id*., Ex. 8 (Dunham Dep. 63:17 – 65:3).  In a settlement agreement resolving the WSP Litigation,
    the parties agreed that the date of substantial completion was November 21, 2003 – ten days
24  prior to commencement of the Policy.  *Id*.

ORDER - 3

1   fungus.  *Id*.  Virginia took this position on the basis that the losses claimed by the HOAs, in

2   Virginia's words, consisted of "water intrusion including mold on ceilings, etc."  *Id*., at 2.

3          Virginia also claimed that the "damage to your work" exclusion – a provision that

4   generally excludes coverage for damage caused by the policyholder (as opposed to damage

5   caused by third-parties, such as the policyholder's subcontractors) – "may well operate to bar

6   coverage for this claim."  *Id*.  Rather than claiming that this exclusion definitively barred

7   coverage, however, Virginia stated that "we do not have sufficient information to know if the

8   subcontractor exception to the exclusion might apply." *Id*.

9          Although the Denial Letter invited Plaintiff to submit any "additional information you

10  would like us to consider," *id.*, at 7, there were no subsequent communications between Ledcor

11  and Virginia until July 24, 2007, when Ledcor notified Virginia that the townhomes HOA had

12  filed a lawsuit against WSP in the Washington state court alleging various defects in the

13  building, and that Ledcor had been named as a third-party defendant in that action.  *Id*. (McGillis

14  Decl., Ex. 16 (July 24, 2007 Tender of Defense and Indemnity) ("Second Tender")).[2]  On that

15  date, Ledcor sent the relevant pleadings to Virginia and re-tendered its claim for coverage.  *Id*.

16  However, Virginia never responded to the Second Tender.  *Id*. (McGillis Decl., Ex. 8 (Dunham

17  Dep. 41:24 – 42:18), Ex. 17 (Poskus Dep. 105:13-23)).

18         Six months later, on January 17, 2008, the condominiums HOA filed a similar suit

19  against WSP, and Ledcor was again named as a third-party defendant.  *Id*. (McGillis Decl., Ex.

20  18 (January 17, 2008 Tender of Defense and Indemnity) (the "Third Tender")).  Ledcor again

21  sent the relevant pleadings to Virginia and again re-tendered its claim for coverage.  *Id*.  Virginia

22  never responded to the Third Tender.  *Id*. (McGillis Decl., Ex. 17 (Poskus Dep. 109:22 –

23  ────────────────────────

24  [2] Because neither party has provided the Court with the pleadings from the HOA litigations, the
    Court is unable to verify exactly what alleged defects served as the basis for the HOAs' claims.

1    110:15)).

2           The two HOA lawsuits were consolidated into a single action (the "Underlying Action"),

3    which ultimately settled before trial.  There is no dispute that Ledcor received a complete

4    defense in the Underlying Action from American Home, one of its other insurers, and that

5    American Home paid the settlement on Ledcor's behalf.

6           B.       Virginia's Investigation and Denial of Coverage

7           Ledcor claims that the Denial Letter issued by Virginia "misinterpreted and

8    misrepresented" the Policy, and that Virginia failed to acknowledge and investigate Ledcor's

9    initial tender for defense and indemnity.  Motion, at 2.  Ledcor bases these claims upon the

10   following evidence.

11          First, Virginia's claims handler, Jim Dunham, acknowledged during his deposition that

12   the "damage to your work exception" would not apply to work conducted by Ledcor's

13   subcontractors.  Dkt. # 141 (McGillis Decl., Ex. 8 (Dunham Dep. 59:5-18, 59:22 – 60:1-11)).  He

14   further testified that, at the time Virginia issued the Denial Letter, he knew that Ledcor was the

15   general contractor on the Adelaide Project and that it employed "a number of subcontractors."

16   *Id*.  Even though Virginia possessed such knowledge, there is no evidence that it conducted any

17   investigation into whether a subcontractor caused the damages at issue.

18          Second, the Denial Letter explicitly states that Virginia was denying coverage on the

19   basis of the Fungus Exclusion due to "water intrusion including mold on ceilings, etc."  Dkt. #

20   141 (McGillis Decl., Ex. 12 (Denial Letter)).  Dunham testified that Virginia came to this

21   conclusion because mold or fungus "would have been" referenced in the list of construction

22   defects issued by the HOAs.  *Id*., Ex. 8 (Dunham Dep. 32:13 – 33:4)).  However, the lists of

23   construction defects provided by the HOAs merely referenced water stains and other "water

24

ORDER - 5

1    damage" – they did not include any reference to mold or fungus.  *Id.*, Ex. 6 (Letter and

2    Attachments from Ledcor's Counsel)).

3        Third, although Virginia invoked the Progressive Loss Exclusion on account of Ledcor's

4    statements that the Adelaide Project had been "substantially completed" prior to commencement

5    of the Policy,[3] the evidence suggests that Virginia knew certain "punch list" work was still

6    ongoing at the Adelaide Project as late as April of 2004 – several months into the term of the

7    Policy.  *Id.*, Ex. 8 (Dunham Dep. 32:6-9).  Ledcor claims that a reasonable investigation by

8    Virginia would have revealed the ongoing nature of the work at the Adelaide Project, and would

9    have at least required an inquiry into whether the construction defects at issue occurred within

10   the term of the Policy.  Motion, at 7-8.

11       Ledcor claims that Virginia's denial of coverage and failure to investigate, together with

12   its subsequent failures to respond, constitute bad faith and breach of contract, in addition to

13   violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act.

14                           **III. <u>DISCUSSION</u>**

15       A.    <u>Summary Judgment Standard</u>

16       Summary judgment is proper only if the pleadings, discovery, affidavits and disclosure

17   materials on file show that "there is no genuine dispute as to any material fact and the movant is

18   entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c).  An issue is "genuine" if "a

19   reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might

20   affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477

21   U.S. 242, 248 (1986).

22       The moving party is entitled to judgment as a matter of law when the nonmoving party

23   ─────────────────────

24   [3] In Dunham's words:  "If the work was defective, it was defective when the work was
     completed.  It didn't become defective over time."  *Id.*, Ex. 8 (Dunham Dep. 61:22 – 62:16).

1   fails to make a sufficient showing on an essential element of a claim in the case on which the

2   nonmoving party has the burden of proof. *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986).

3   The Court resolves any factual disputes in favor of the nonmoving party only when the facts

4   specifically attested by each party are in contradiction. *T.W. Elec. Serv., Inc. v. Pac. Elec.*

5   *Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). A party asserting that a fact cannot be, or

6   is, disputed must support the assertion by citing to particular parts of material in the record,

7   including deposition, documents, electronically stored information, affidavits or declarations.

8   Fed. R. Civ. P. 56(c)(1)(A). The Court need only consider the cited materials, but may in it is

9   discretion consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court may also

10  render judgment independent of the motion, and grant the motion on grounds not raised by a

11  party, after giving notice and reasonable time to respond. Fed. R. Civ. P. 56(f)(2).

12          B.      Bad Faith

13          Plaintiff argues that "Virginia's 'investigation' into Ledcor's multiple tenders for defense

14  and indemnity was so unreasonably defective that reasonable minds could not differ that it

15  constitutes a breach of the obligation of good faith and fair dealing" imposed under RCW

16  48.01.030. Motion, at 11.[4] The Court agrees that, with respect to its invocation of the Fungus

17  Exclusion, Virginia's conduct rises to the level of bad faith. The Court disagrees, however, that

18  Virginia's invocation of the "damage to your work" exclusion constitutes bad faith. As to the

19  remaining grounds underlying Plaintiff's bad faith claim – namely, its invocation of the

20  Progressive Loss Exclusion and its failure to respond to the Second and Third Tenders – genuine

21  issues of material fact preclude summary judgment.

22

23  [4] RCW 48.01.030 states: "The business of insurance is one affected by the public interest,
    requiring that all persons be actuated by good faith, abstain from deception, and practice honestly
24  and equity in all insurance matters."

ORDER - 7

1    "An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co.*

2    *of Am. V. Butler*, 118 Wn.2d 383, 389 (1992).  Claims of insurer bad faith "are analyzed

3    applying the same principles as any other tort:  duty, breach of that duty, and damages

4    proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485

5    (2003).  To succeed on such a claim, the insured must show the insurer's breach of the insurance

6    contract was "unreasonable, frivolous, or unfounded." *Overton v. Consol. Ins. Co.*, 145 Wn.2d

7    417, 433 (2002).  The test is not whether the insurer's interpretation of the policy is correct, but

8    whether the insurer's conduct was reasonable. *Wright v. Safeco Ins. Co.*, 124 Wash.App. 263,

9    279-80 (2004).  Although the question of whether an insurer acted in bad faith is generally a

10   question of fact, *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 (2008),

11   "where 'reasonable minds could not differ as to a finding that the adjuster's incuriousness and

12   her failure to inquire further' into the claim constitutes a failure to conduct a reasonable

13   investigation claim, summary judgment is warranted." *Aecon Bldgs., Inc. v. Zurich North*

14   *America*, 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008) (*citing Bryant v. Country Life Ins. Co.*,

15   414 F. Supp. 2d 981, 1000 (W.D. Wash. 2006)).

16          Here, reasonable minds could not differ that Virginia had no basis for invoking the

17   Fungus Exclusion, as the HOAs never complained about the presence of mold or fungus.

18   Defendant was not entitled to deny coverage simply because it may have suspected that mold or

19   fungus damage existed based upon the HOAs' allegations of water intrusion. *Indus. Indem. Co.*

20   *v. Kallevig*, 114 Wn.2d 907, 917 (1990) ("An insurer does not have a reasonable basis for

21   denying coverage and, therefore, acts without reasonable justification when it denies coverage

22   based upon suspicion and conjecture.").  In the absence of any evidence that Defendant

23   conducted an investigation into the presence of mold or fungus before denying coverage

24

1   pursuant to the Fungus Exclusion, the Court has little trouble concluding that Defendant acted

2   unreasonably.  *See*, *e.g.*, *Aecon Bldgs., Inc.*, 572 F. Supp. 2d at 1237 (finding that insurer acted in

3   bad faith when its adjuster "conducted no investigation at all because she assumed without

4   adequate factual basis" that the claim was not covered).

5       The Court is not persuaded by Defendant's attempt to characterize its invocation of the

6   Fungus Exclusion as a mere "reservation of rights," or its argument that "[t]here is no evidence

7   that [Virginia] denied [coverage] on that basis."  Response, at 11 n.4.  The Denial Letter

8   explicitly states that the Progressive Loss and Fungus Exclusions *both* "clearly operates [sic] to

9   bar coverage for all the damage being alleged" by the HOAs, Dkt. # 141 (McGillis Decl., 12

10  (Denial Letter, at 1)), and Defendant even concedes that the Fungus Exclusion formed a "basis

11  for [its] declination" of coverage.  Dkt. # 171 (Response, at 20).

12      It also is not sufficient to argue, as Defendant does here, that the Progressive Loss

13  Exclusion – and not the Fungus Exclusion – was the "primary basis" of the denial.  Indeed, even

14  if the finder of fact were to determine that the Progressive Loss Exclusion bars coverage under

15  the Policy, "an insured may maintain an action against its insurer for bad faith investigation of

16  the insured's claim and violation of the CPA *regardless of whether the insurer was ultimately*

17  *correct in determining coverage did not exist*."  *Coventry Associates v. American States*

18  *Insurance Co.*, 136 Wn.2d 269, 279-80 (1998) (emphasis added).  Because Virginia invoked the

19  Fungus Exception without justification, the Court finds that it has acted in bad faith.

20      The Court reaches the opposite conclusion with respect to Virginia's invocation of the

21  "damage to your work" exclusion.  It is clear that Virginia never actually relied upon that

22  exclusion.  At most, Virginia merely reserved its rights with respect to the "damages to your

23  work" exclusion, while simultaneously indicating that it lacked the information necessary to

24

ORDER - 9

1    make a conclusive determination on the issue.  Such a reservation of rights does not give rise to a

2    claim of bad faith because Plaintiff cannot demonstrate how it has been harmed by such conduct.

3    *See*, *e.g.*, *Am. Capital Homes, Inc. v. Greenwich Ins. Co*., Case No. C09-622-JCC, 2010 U.S.

4    Dist. LEXIS 89403, * 13 (W.D. Wash. Aug. 30, 2010) (even bad faith reservation of rights could

5    not support recovery where plaintiff failed to demonstrate resulting harm or prejudice).

6          As to the remaining grounds underlying Plaintiff's claim of bad faith, genuine issues of

7    material fact preclude summary judgment.  Specifically, questions of fact remain as to whether

8    Virginia acted in a manner that was "unreasonable, frivolous, or unfounded" in concluding that

9    the Progressive Loss Exclusion barred coverage.  The evidence demonstrates, for example, that

10   Certificates of Occupancy were issued for both the townhomes and condominiums in October of

11   2003 – months prior to commencement of the Policy – thereby suggesting that the vast majority

12   of construction on the Adelaide Project had been completed as of that time.  Dkt. # 1 (Complaint,

13   at ¶ XX).  There is no dispute that Ledcor's counsel explicitly told Virginia that, to the extent a

14   date of "substantial completion" could be discerned, that date would have been between August

15   2003 and November 2003.  There also is no dispute that Ledcor entered into a settlement

16   agreement with WSP in which it agreed that the date of "substantial completion" was November

17   21, 2003.  All of this evidence tends to suggest that Defendant was reasonable in concluding that

18   the damage complained of by the HOAs occurred prior to commencement of the Policy, and that

19   the Progressive Loss Exclusion therefore applied.

20         By contrast, Plaintiff has presented evidence that certain "punch list" work was still being

21   completed at the Adelaide Project as late as April of 2004, and that Defendant was aware of this

22   fact at the time it issued the Denial Letter.  Ledcor presents evidence that, notwithstanding this

23   knowledge, Defendant did not investigate the ongoing "punch list" work as a possible cause of

24

ORDER - 10

1   the damages claimed by the HOAs.[5]  This evidence tends to suggest that Defendant was

2   unreasonable in concluding, without further investigation, that the Progressive Loss Exclusion

3   barred coverage.  Because this competing evidence creates factual questions regarding the

4   reasonableness of Defendant's conduct, summary judgment is inappropriate.  Fed. R. Civ. P.

5   56(a), (c).

6          The same result follows with respect to Defendant's failure to respond to the Second and

7   Third Tenders.  A question of fact remains as to whether, under the circumstances presented

8   here, that conduct was "unreasonable, frivolous, or unfounded."   This is particularly true in light

9   of the fact that the Denial Letter specifically states that "there is *no potential for coverage* for

10  this loss . . . [s]hould an action be served."  Dkt. # 141 (McGillis Decl., Ex. 12 (Denial Letter, at

11  1) (emphasis added)).  The Denial Letter takes for granted that such an action would be served,

12  as it explicitly refers to the HOAs as "plaintiffs."  *Id*.  These statements make clear that, even in

13  the event the HOAs filed a lawsuit, Virginia had no intention of changing its coverage position.

14  Against that backdrop, the finder of fact might reasonably conclude that Virginia's failure to

15  respond to the Second and Third Tenders was not "unreasonable, frivolous, or unfounded" since

16  such a response would merely reiterate the same definitive coverage position already set forth in

17

18  [5] Defendant responds that the "punch list" work at issue, some of which is referenced in
    documents submitted to Virginia by Ledcor's counsel, *see* Dkt. # 141 (McGillis Decl., Ex. 6

19  (Correspondence and Attachments from Ledcor's Counsel), consisted of service, maintenance,
    correction, repair, and replacement activity that the parties agreed was to be treated as

20  "completed" as of the inception of the Policy.  *See* Dkt. # 149 (Skinner Decl., Ex. A (Policy, at
    3043 and 3059) ("Work that may need service, maintenance, correction, repair or replacement,

21  but which is otherwise complete, will be treated as completed.")).  As such, Defendant argues
    that the "punch list" work at issue, even if ongoing into the term of the Policy, was subject to the

22  Progressive Loss Exclusion.  Dkt. # 171 (Response, at 14).  The Court is unable to resolve this
    issue on the present Motion, as neither party has presented the Court with sufficient evidence

23  regarding the nature, scope, or extent of the "punch list" work in question.  Accordingly, this
    issue constitutes a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P.

24  56(a), (c).

1   the Denial Letter.[6]  Because the finder of fact might reasonably find for either party on this issue,

2   summary judgment is inappropriate.  Fed. R. Civ. P. 56(a), (c).

3        Because Plaintiff has, at a minimum, established bad faith with respect to Defendant's

4   invocation of the Fungus Exclusion, it is entitled to a rebuttable presumption of harm.  *Am. Best*

5   *Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 298, 411-12 (2010).  "The presumptive measure of

6   the insured's damages in a bad faith action is the [amount of the settlement entered into between

7   the plaintiff and the claimant], so long as the amount is reasonable and not the product of fraud

8   or collusion."  *Howard v. Royal Spec. Underwriting*, 121 Wn. App. 372, 374-375 (Wash. Ct.

9   App. 2004) (*citing Besel v. Viking Ins. Co.*, 146 Wn.2d 730 (2002)).  Moreover, "if the insured

10  prevails on [a] bad faith claim," as is the case here, "the insurer is estopped from denying

11  coverage."  *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 920

12  (2007).

13       Here, Plaintiff settled the Underlying Action for $1,270,600.00, and the state court

14  determined that the settlement was reasonable and not the product of collusion or fraud.  Dkt.#

15  40 (Samuelson Decl., Ex. 2 (Order Granting Motion for Reasonableness Determination)).  As

16  such, the presumptive amount of Plaintiff's damages is $1,270,600.00.  Because Defendant acted

17  in bad faith, it is estopped from denying coverage with respect to that settlement.  *Mutual of*

18  *Enumclaw Ins. Co.*, 161 Wn.2d at 920.  However, because there is evidence that Plaintiff

19  recovered some portion of the $1,270,600.00 settlement from subcontractors and other insurers,

20  further proceedings are required to determine whether and to what extent Plaintiff's presumptive

21  _____

22  [6] Although there is no dispute that Defendant violated Washington's Administrative Code by not
     responding to the Second and Third Tenders, *see, e.g.*, Dkt. # 167 (Young Decl., Ex. A (Heinze
23  Expert Rpt., at 17)), those violations at most establish the duty and breach elements of Plaintiff's
     bad faith claim.  In order to prevail on such a claim, the plaintiff must also establish, among
     other things, that the defendant's conduct was "unreasonable, frivolous, or unfounded."
24  *Overton*, 145 Wn.2d at 433.

ORDER - 12

1  damages should be reduced to reflect Plaintiff's actual losses.

2      C.      Breach of Insurance Contract

3      Plaintiff argues that it is entitled to summary judgment on its claim that Defendant

4  breached the Policy by failing to defend and indemnify it in connection with the Underlying

5  Action.  Defendant argues that it owed no contractual duty to the Plaintiff, and that, in any event,

6  Plaintiff cannot established that it was harmed as a result of the alleged breach.  Genuine issues

7  of material fact preclude summary judgment on this claim.

8      The elements of a cause of action for breach of contract are:  (1) the existence of a legal

9  duty under the contract; (2) breach of that duty; and (3) damages proximately caused by the

10  breach. *See Northwest Insep. Forest Mfrs. V. Dep. of Labor & Indus*., 78 Wn.App. 707, 712

11  (Wash. Ct. App. 1995).

12      Although Defendant acted in bad faith by invoking the Fungus Exclusion without

13  justification, it does not necessarily follow that Defendant also breached the Policy by failing to

14  defend and indemnify Plaintiff.  Indeed, for the reasons set forth above, the finder of fact might

15  reasonably conclude that the Progressive Loss Exclusion barred coverage of the claims at issue,

16  thereby negating Defendant's contractual obligations to defend and indemnify.  Moreover,

17  Plaintiff has presented no evidence to substantiate its assertion that the "defects or property

18  damage [in question] occurred ***during*** Virginia's policy period."  Dkt. # 168 (Plaintiff's Motion

19  2, at 15) (emphasis added).  Indeed, the fact that some "punch list" work may have been ongoing

20  into the term of the Policy says nothing about whether that work was defective, let alone that it

21  was the cause of – or even related to – the damages claimed by the HOAs.  In the absence of any

22  evidence linking the "punch list" work to the claims in the Underling Action, Plaintiff is not

23  entitled to summary judgment on its contract claim.  In order to prevail on this claim at trial,

24

ORDER - 13

1    Plaintiff will need to come forward with, among other things, evidence that the damages at issue

2    in the Underlying Action occurred within the term of the Policy.

3         Defendant also argues that, pursuant to the Policy's "Other Insurance" provision – which

4    provides that Virginia had no obligation to defend Plaintiff unless the damages at issue exceed

5    the limits of "[a]ny other primary insurance available to you," Dkt. # 149 (Skinner Decl., Ex. A

6    (Policy, at 3044)) – it was not contractually obligated to defend Plaintiff in the Underlying

7    Action.  Although Defendant argues that Plaintiff was named as an additional insured on the

8    policies of one or more of its subcontractors, it has presented no evidence as to whether the other

9    insurance policies in question constitute "primary insurance."  Additionally, to the extent the

10   American Home policy constitutes "primary insurance," that policy contained an "Other

11   Insurance" provision that is substantially similar to the one contained in the Policy.  Dkt. # 151

12   (McGillis Decl., Ex. 1 (American Home Policy, at ¶ 9).  The commonality of these provisions

13   renders them mutually repugnant and void as to each other. *Polygon NW v. Am. Nat'l Fire Ins.*

14   *Co.*, 143 Wn. App. 753, 778 (2008).  As such, the Policy's "Other Insurance" provision does not

15   operate to excuse Virginia's defense obligations thereunder.

16        Defendant also argues that, in any event, Plaintiff's contract claim must be summarily

17   dismissed because Plaintiff cannot establish the element of damages.  Specifically, Defendant

18   argues that American Home's defense and settlement of the Underlying Action on Ledcor's

19   behalf precludes a finding that Lendcor was damaged.  *See* Dkt. # 171 (Response, at 17-18).  The

20   Court disagrees.  "The substantive law in Washington permits recovery by an insured even if he

21   or she has been fully reimbursed." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1094 (9th Cir.

22   2004).  Here, Plaintiff seeks to recover the amount it paid to settle the Underlying Action,

23   together with the insurance premiums it paid to Virginia under the Policy.  The amount of

24

ORDER - 14

1  Plaintiff's contract damages, if any, is an issue most appropriately left for resolution at trial.  Fed.

2  R. Civ. P. 56(a), (c).

3          D.       Washington's Consumer Protection Act

4          Plaintiff next argues that it is entitled to summary judgment on its claims pursuant to the

5  Washington Consumer Protection Act ("CPA").  To prevail on such a claim, a plaintiff must

6  show:  (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the

7  public interest; (4) that injured the plaintiff's business or property; and (5) that the unfair or

8  deceptive act complained of caused the injury suffered.  *Hangman Ridge Training Stables, Inc. v.*

9  *Safeco Title Ins. Co*., 105 Wash.2d 778, 780 (1986) (hereinafter, the "*Hangman* Factors").

10                  1.       Unfair or Deceptive Trade Practice

11         The Washington Administrative Code ("WAC") contains specific consumer protection

12  standards for the insurance industry, and the regulations contained therein set forth various

13  conduct that constitutes unfair or deceptive acts or practices.  WAC 284-30-330.  A violation of

14  WAC 284-30-330 may constitute a *per se* violation of the CPA, assuming the other *Hangman*

15  Factors are also met.  *Truck Ins. Exchange v. Vanport Homes, Inc*., 147 Wash.2d 751, 764

16  (2002).  An insurer's bad faith also constitutes a *per se* unfair trade practice.  *RSUI Indem. Co. v.*

17  *Vision One, LLC*, Case No. C08-1386RSL, 2009 U.S. Dist. LEXIS 118425, *8-9 (W.D. Wash.

18  Dec. 18, 2009).  Here, the Court has already determined that Defendant acted in bad faith by

19  denying coverage on the basis of the Fungus Exclusion.  As such, that conduct constitutes a *per*

20  *se* unfair trade practice.  *Id.*[7]

21         Plaintiff claims that Defendant committed additional *per se* unfair trade practices through

22  its violation of six specific provisions of WAC 284-30-330, which states in relevant part as

23  ───────────────

[7] Defendant's bad faith invocation of the Fungus Exclusion also constitutes a *per se* unfair trade

24  practice pursuant to WAC 284-30-330(4), discussed below.

1   follows:

2       The following are hereby defined as unfair methods of competition and unfair or
        deceptive acts or practices of the insurer in the business of insurance, specifically
3       applicable to the settlement of claims:

4       (1)     Misrepresenting pertinent facts or insurance policy provisions.

5       (2)     Failing to acknowledge and act reasonably promptly upon
                communications with respect to claims arising under insurance policies.
6
        (3)     Failing to adopt and implement reasonable standards for the prompt
7               investigation of claims arising under insurance policies.

8       (4)     Refusing to pay claims without conducting a reasonable investigation.

9       (5)     Failing to affirm or deny coverage of claims within a reasonable time after
                fully completed proof of loss documentation has been submitted.
10
                                    *       *       *
11
        (13)    Failing to promptly provide a reasonable explanation of the basis in the
12              insurance policy in relation to the facts or applicable law for denial of a
                claim or for the offer of a compromise settlement.
13
    WAC 284-30-330.
14
            Plaintiff argues that Defendant violated WAC 284-30-330(1) by "misrepresenting" that
15
    the Adelaide Project was complete prior to December 2003 and by "reading into the policy the
16
    term 'substantial completion.'"  Dkt. # 168 (Motion, at 18).  Plaintiff argues that Defendant
17
    violated WAC 284-30-330(2), (3) and (5) by "waiting over six months to respond to Ledcor's
18
    original tender of defense and by ignoring Ledcor's re-tenders sent in 2007 and 2008."  *Id*.
19
    Plaintiff argues that Defendant violated WAC 284-30-330(4) by failing to investigate the date on
20
    which the Adelaide Project was completed.  *Id*.  Plaintiff also argues that Virginia violated WAC
21
    284-30-330(13) by "failing to promptly respond and provide a reasonable explanation" following
22
    Plaintiff's submission of the Second and Third Tenders.  *Id*.
23
            As to Plaintiff's claim under WAC 284-30-330(1), the Court finds that Defendant did not
24

1 misrepresent the date that the Adelaide Project was completed, and that it did not read the term

2 "substantial completion" into the Policy.  As noted above, Defendant took the position that the

3 damages complained of in the Underlying Action had occurred on or before the date of

4 "substantial completion" previously represented to it by Plaintiff's own counsel.  Plaintiff has

5 provided no evidence to substantiate the bizarre assertion that Defendant's subsequent reliance

6 on that date constitutes a "misrepresentation."

7          The Court finds that Defendant did not violate WAC 284-30-330(2) in connection with

8 its handling of the original tender.  WAC 284-30-330(2) requires that the insurer "acknowledge

9 and act reasonably promptly" in response to correspondence relating to an insurance policy.

10 Because Virginia acknowledged Plaintiff's original tender within days of its submission, *see* Dkt.

11 # 141 (McGillis Decl., Ex. 1 (Notice of Claim dated August 11, 2005)); *id*., Exs. 3 and 5 (Email

12 Correspondence dated August 16-17, 2005), and requested relevant information relating to the

13 HOAs' potential claims shortly thereafter, *id*., it acted "reasonably promptly."

14          The Court reaches the opposite conclusion as to Virginia's handling of the Second and

15 Third Tenders.  Indeed, there is no dispute that Defendant never responded to the Second and

16 Third Tenders – failures that Defendant attempts to characterize as a "good faith mistake," Dkt. #

17 171 (Response, at 18), a "procedural misstep," Dkt. # 166 (Motion, at 10), and "a technical

18 violation of the Washington claims handling regulations."  Dkt. # 148 (Response, at 10).

19 However one chooses to characterize this conduct, there is no question that Defendant failed to

20 act "reasonably promptly" as to the Second and Third Tenders.  Defendant's failure to do so

21 constitutes a violation of WAC 284-30-330(2).[8]

22

23 ──────────────
[8] Defendant did not violate WAC 284-30-330(3) through its failure to respond to the Second and
Third Tenders, as those failures demonstrate a deficiency in the manner in which defendant
24 *responded* to particular claims – not necessarily the manner in which Defendant *investigated*

1    As to Plaintiff's claim under WAC 284-30-330(4), genuine issues of material fact

2  (detailed above) preclude summary judgment on the question of whether Defendant conducted a

3  reasonable investigation into the timing of the damages claimed in the Underlying Action.

4    As to Plaintiff's claim under WAC 284-30-330(5), the Court finds that Defendant issued

5  the Denial Letter within a reasonable amount of time.  Indeed, Defendant made numerous

6  requests for information – both from Plaintiff and various third-parties – between the time it

7  acknowledged the original tender and the time it issued the Denial Letter.  *See* Dkt. # 141

8  (McGillis Decl., Exs. 3, 4, 5, 7, 10 (Emails dated August 16, 2005, August 17, 2005, September

9  6, 2005, and February 6, 2006)).  Notwithstanding its various requests for information, there is

10  no dispute that Plaintiff never provided Defendant with relevant and responsive information –

11  namely, subcontract agreements and additional insured endorsements.  *Id*., Ex. 3 (Email dated

12  August 16, 2005, Requesting Information)); Dkt. # 176 (Reply, at 10 (acknowledging that

13  Plaintiff "never provided the information Virginia requested")).  Moreover, after requesting the

14  documents in question, Defendant's adjuster informed Plaintiff's counsel that he would "be back

15  in contact ***after*** [***he receives***] the policy and ***all of the documentation on this project***."  Dkt. #

16  141 (McGillis Decl., Ex. 5 (Email from Virginia to Ledcor's Counsel dated August 17, 2005)

17  (emphasis added)).

18    In light of the fact that Defendant spent time waiting for documents it requested but

19  which Plaintiff never provided, and given the complexity of the claims at issue (i.e., multi-party

20  litigation involving the presence of numerous subcontractors and insurers), the Court finds that

21  six months was a reasonable amount of time for Defendant to wait before issuing the Denial

22  Letter, and that the timing of that correspondence does not violate WAC 248-30-330(5).

23  

24  those claims.  Nor do those failures constitute a violation of WAC 284-30-330(5) or (13), as
    Defendant had previously stated its coverage position in the Denial Letter.

1                                    *     *     *     *

2          Because Plaintiff has established two *per se* unfair trade practices – i.e., Defendant's bad

3    faith assertion of the Fungus Exclusion and its violation of WAC 284-30-330(2) – the Court now

4    must consider whether Plaintiff has satisfied the remaining *Hangman* Factors.

5                        2.    Remaining *Hangman* Factors

6          The second *Hangman* Factor is established as a matter of law because the subject matter

7    of this action involves an insurance contract.  *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d

8    981, 1002-03 (W.D. Wash. 2006).  The third *Hangman* Factor also is established as a matter of

9    law since CPA claims "alleging unfair insurance claims practices meet the public interest

10   element because RCW 48.01.030 declares that the business of insurance is one affected by the

11   public interest."  *Id.* (*citing Anderson v. State Farm Mut. Ins. Co.*, 101 Wn. App. 323 (Wash Ct.

12   App. 2000)).  However, as to the last two *Hangman* Factors – injury to business or property and

13   causation – Plaintiff has not made a sufficient showing to warrant summary judgment.

14   Specifically, genuine issues of material fact remain as to the extent of the damages suffered by

15   Plaintiff and the causal link between Defendant's CPA violations and those damages.  These

16   issues are most appropriately left for resolution at trial.  Fed. R. Civ. P. 56(a), (c).

17         E.    Insurance Fair Conduct Act

18         Finally, Plaintiff claims that it is entitled to summary judgment pursuant to the Insurance

19   Fair Conduct Act ("IFCA"), RCW 48.30.015.  The IFCA states, in pertinent part, that "[a]ny first

20   party claimant to a policy of insurance who is unreasonably denied a claim for coverage or

21   payment of benefits by an insurer may bring an action . . . to recover actual damages sustained

22   together with the costs of the action, including reasonable attorneys' fees and litigation costs."

23   *Id.*

24

1    The IFCA became effective on December 6, 2007 – nearly two years after Defendant's

2    issuance of the Denial Letter and between Plaintiff's submission of the Second and Third

3    Tenders.  IFCA is not retroactive.  *See Malbco Holdings, LLC v. Amco Ins. Co*., 546 F. Supp. 2d

4    1130, 1133 (E.D. Wash. 2008).  The operative date in determining whether the IFCA applies is

5    the date that a claim for coverage is denied.  *Pacific Coast Container, Inc. v. Royal Surplus Lines

6    Ins. Co.*, Case No. C08-0278MJP, 2008 U.S. Dist. LEXIS 108426, *24 (W.D. Wash. July 8,

7    2008).  Here, because Defendant denied coverage on February 21, 2006, the IFCA does not

8    apply, regardless of whether Defendant subsequently failed to respond to the Second and Third

9    Tenders.  *Id*.  Accordingly, Plaintiff's IFCA claim is dismissed.

10                                   **IV. <u>CONCLUSION</u>**

11    The Court, having reviewed the pleadings, the parties' respective motions for summary

12   judgment and responses and replies thereto, along with the remaining record, does hereby

13   ORDER:

14   (1)    Plaintiff's Motion for Partial Summary Judgment Against Defendant Virginia
            Surety Company, Inc. for Insurance Bad Faith (Dkt. # 140)  is GRANTED to the
15          extent of establishing liability for Defendant's bad faith invocation of the Fungus
            Exclusion, and otherwise DENIED;
16
17   (2)    Plaintiff's Motion for Summary Judgment Against Defendant Virginia Surety
            Company, Inc. for Breach of Insurance Contract, Violations of Washington's
            Consumer Protection Act, and Violations of the Insurance Fair Conduct Act (Dkt.
18          # 168) is DENIED; and

19   (3)    Defendant's Motion for Summary Judgment (Dkt. # 166) is GRANTED with
            respect to Plaintiff's IFCA claim, and otherwise DENIED.
20
     Dated this 9th day of December 2011.
21

22

23   RICARDO S. MARTINEZ
     UNITED STATES DISTRICT JUDGE
24

ORDER - 20