UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LEDCOR INDUSTRIES (USA) INC., a Washington corporation,<br><br>Plaintiff,<br><br>v.<br><br>VIRGINIA SURETY COMPANY, INC., a foreign corporation, et al.,<br><br>Defendants. | CASE NO. C09-1807RSM<br><br>ORDER ON MOTIONS FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

This matter comes before the Court on Plaintiff's Motion for Partial Summary Judgment Against Defendant Virginia Surety Company, Inc. for Insurance Bad Faith, Dkt. # 140 ("Plaintiff's Motion 1"), Plaintiff's Motion for Summary Judgment Against Defendant Virginia Surety Company, Inc. for Breach of Insurance Contract, Violations of Washington's Consumer Protection Act, and Violations of the Insurance Fair Conduct Act, Dkt. # 168 ("Plaintiff's Motion 2"), and Defendant's Motion for Summary Judgment. Dkt. # 166 ("Defendant's

ORDER - 1

Motion"). The Court has reviewed Plaintiff's Motion 1, Plaintiff's Motion 2, Defendant's Motion, and all documents submitted in support thereof. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART Plaintiff's Motion 1, DENIES Plaintiff's Motion 2, and GRANTS IN PART and DENIES IN PART Defendant's Motion.

## II. BACKGROUND

A. Chronology of Events

This case arises out of an insurance contract between Plaintiff Ledcor Industries (USA), Inc. ("Ledcor" or "Plaintiff") and Defendant Virginia Surety Company, Inc. ("Virginia" or "Defendant"). Ledcor is a general contractor who built a mixed-use real estate project in West Seattle – commonly referred to as the Adelaide Project – that includes both condominiums and townhomes. Ledcor was hired to build the Adelaide Project by West Seattle Property, LLC ("WSP"), the owner and developer of the property. Ledcor purchased an insurance policy from Virginia relating to the Adelaide Project covering the period of December 1, 2003 through December 1, 2004. Dkt. # 40 (Samuelson Decl., Ex. 5 (the "Policy")). The Policy imposes both defense and indemnity obligations upon Virginia and is subject to a number of exclusions. *Id*.

In August of 2005, following completion of the Adelaide Project, the homeowners associations for both the townhomes and condominiums (collectively, the "HOAs") advised Ledcor of various defects in the building, and Ledcor in turn notified Virginia of the HOAs' potential claims. Dkt. # 141 (McGillis Decl., Ex. 1 (General Liability Report Forms)). Virginia responded by requesting documents and information from Ledcor, including a list of the alleged construction defects, which Ledcor provided shortly thereafter. *Id*., Ex. 6 (Letter and Attachments from Ledcor's Counsel). In response to one such request, Ledcor's counsel sent an

email to Virginia in which he stated that a "disagreement" existed as to the date that Ledcor achieved "substantial completion" of the Adelaide Project and that "[i]f it were possible to establish the date [of substantial completion] it would fall between August 2003 and November 2003." *Id.*, Ex. 7 (Email dated September 6, 2005).[1]

On February 21, 2006, Virginia sent a letter to Ledcor denying coverage. *Id.* (McGillis Decl., Ex. 12 ("Denial Letter")). As a threshold matter, Virginia took the position that its duty to defend Ledcor applied only with respect to a "suit" for damages, and that its duty to indemnify applied only with respect to damages Ledcor became "legally obligated to pay." *Id.*, at 1. Since no such suit had yet been filed by either of the HOAs, and because Ledcor had not become legally obligated to pay any damages, Virginia took the position that "there is not yet any duty to defend" or indemnify. *Id.*

Relying upon two exclusions contained in the Policy, Virginia also concluded that, even in the event a "suit" had been filed, "there is no potential coverage for this loss." *Id.* First, Virginia relied upon the Policy's "Progressive, Continuous or Intermittent 'Property Damage' Exclusion" (the "Progressive Loss Exclusion") – a provision that generally excludes coverage for damages that occurred prior to commencement of the Policy. *Id.* Virginia took this position based upon Ledcor's previous statements that the Adelaide Project had been "substantially completed" ten days prior to commencement of the Policy. Second, Virginia relied upon the Policy's "Fungus Exclusion," which generally excludes coverage for damage caused by mold or

---

[1] The "disagreement" to which Ledcor's counsel referred arose in the context of a separate litigation between Ledcor and WSP involving a contract dispute (the "WSP Litigation"). In the WSP Litigation, Ledcor took the position that the date of substantial completion was October 24, 2003, and WSP took the position that the date of substantial completion was November 21, 2003. *Id.*, Ex. 8 (Dunham Dep. 63:17 – 65:3). In a settlement agreement resolving the WSP Litigation, the parties agreed that the date of substantial completion was November 21, 2003 – ten days prior to commencement of the Policy. *Id.*

fungus. *Id*. Virginia took this position on the basis that the losses claimed by the HOAs, in Virginia's words, consisted of "water intrusion including mold on ceilings, etc." *Id*., at 2.

Virginia also claimed that the "damage to your work" exclusion – a provision that generally excludes coverage for damage caused by the policyholder (as opposed to damage caused by third-parties, such as the policyholder's subcontractors) – "may well operate to bar coverage for this claim." *Id*. Rather than claiming that this exclusion definitively barred coverage, however, Virginia stated that "we do not have sufficient information to know if the subcontractor exception to the exclusion might apply." *Id*.

Although the Denial Letter invited Plaintiff to submit any "additional information you would like us to consider," *id.*, at 7, there were no subsequent communications between Ledcor and Virginia until July 24, 2007, when Ledcor notified Virginia that the townhomes HOA had filed a lawsuit against WSP in the Washington state court alleging various defects in the building, and that Ledcor had been named as a third-party defendant in that action. *Id*. (McGillis Decl., Ex. 16 (July 24, 2007 Tender of Defense and Indemnity) ("Second Tender")).[2] On that date, Ledcor sent the relevant pleadings to Virginia and re-tendered its claim for coverage. *Id*. However, Virginia never responded to the Second Tender. *Id*. (McGillis Decl., Ex. 8 (Dunham Dep. 41:24 – 42:18), Ex. 17 (Poskus Dep. 105:13-23)).

Six months later, on January 17, 2008, the condominiums HOA filed a similar suit against WSP, and Ledcor was again named as a third-party defendant. *Id*. (McGillis Decl., Ex. 18 (January 17, 2008 Tender of Defense and Indemnity) (the "Third Tender")). Ledcor again sent the relevant pleadings to Virginia and again re-tendered its claim for coverage. *Id*. Virginia never responded to the Third Tender. *Id*. (McGillis Decl., Ex. 17 (Poskus Dep. 109:22 –

---
[2] Because neither party has provided the Court with the pleadings from the HOA litigations, the Court is unable to verify exactly what alleged defects served as the basis for the HOAs' claims.

ORDER - 4

110:15)).

The two HOA lawsuits were consolidated into a single action (the "Underlying Action"), which ultimately settled before trial. There is no dispute that Ledcor received a complete defense in the Underlying Action from American Home, one of its other insurers, and that American Home paid the settlement on Ledcor's behalf.

B. Virginia's Investigation and Denial of Coverage

Ledcor claims that the Denial Letter issued by Virginia "misinterpreted and misrepresented" the Policy, and that Virginia failed to acknowledge and investigate Ledcor's initial tender for defense and indemnity. Motion, at 2. Ledcor bases these claims upon the following evidence.

First, Virginia's claims handler, Jim Dunham, acknowledged during his deposition that the "damage to your work exception" would not apply to work conducted by Ledcor's subcontractors. Dkt. # 141 (McGillis Decl., Ex. 8 (Dunham Dep. 59:5-18, 59:22 – 60:1-11)). He further testified that, at the time Virginia issued the Denial Letter, he knew that Ledcor was the general contractor on the Adelaide Project and that it employed "a number of subcontractors." *Id*. Even though Virginia possessed such knowledge, there is no evidence that it conducted any investigation into whether a subcontractor caused the damages at issue.

Second, the Denial Letter explicitly states that Virginia was denying coverage on the basis of the Fungus Exclusion due to "water intrusion including mold on ceilings, etc." Dkt. # 141 (McGillis Decl., Ex. 12 (Denial Letter)). Dunham testified that Virginia came to this conclusion because mold or fungus "would have been" referenced in the list of construction defects issued by the HOAs. *Id*., Ex. 8 (Dunham Dep. 32:13 – 33:4)). However, the lists of construction defects provided by the HOAs merely referenced water stains and other "water

damage" – they did not include any reference to mold or fungus. *Id*., Ex. 6 (Letter and Attachments from Ledcor's Counsel)).

Third, although Virginia invoked the Progressive Loss Exclusion on account of Ledcor's statements that the Adelaide Project had been "substantially completed" prior to commencement of the Policy,[3] the evidence suggests that Virginia knew certain "punch list" work was still ongoing at the Adelaide Project as late as April of 2004 – several months into the term of the Policy. *Id*., Ex. 8 (Dunham Dep. 32:6-9). Ledcor claims that a reasonable investigation by Virginia would have revealed the ongoing nature of the work at the Adelaide Project, and would have at least required an inquiry into whether the construction defects at issue occurred within the term of the Policy. Motion, at 7-8.

Ledcor claims that Virginia's denial of coverage and failure to investigate, together with its subsequent failures to respond, constitute bad faith and breach of contract, in addition to violations of Washington's Consumer Protection Act and Insurance Fair Conduct Act.

### III. DISCUSSION

A. Summary Judgment Standard

Summary judgment is proper only if the pleadings, discovery, affidavits and disclosure materials on file show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a), (c). An issue is "genuine" if "a reasonable jury could return a verdict for the nonmoving party" and a fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

The moving party is entitled to judgment as a matter of law when the nonmoving party

---
[3] In Dunham's words: "If the work was defective, it was defective when the work was completed. It didn't become defective over time." *Id*., Ex. 8 (Dunham Dep. 61:22 – 62:16).

ORDER - 6

fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Cartett*, 477 U.S. 317, 323 (1986). The Court resolves any factual disputes in favor of the nonmoving party only when the facts specifically attested by each party are in contradiction. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). A party asserting that a fact cannot be, or is, disputed must support the assertion by citing to particular parts of material in the record, including deposition, documents, electronically stored information, affidavits or declarations. Fed. R. Civ. P. 56(c)(1)(A). The Court need only consider the cited materials, but may in it is discretion consider other materials in the record. Fed. R. Civ. P. 56(c)(3). The Court may also render judgment independent of the motion, and grant the motion on grounds not raised by a party, after giving notice and reasonable time to respond. Fed. R. Civ. P. 56(f)(2).

B. <u>Bad Faith</u>

Plaintiff argues that "Virginia's 'investigation' into Ledcor's multiple tenders for defense and indemnity was so unreasonably defective that reasonable minds could not differ that it constitutes a breach of the obligation of good faith and fair dealing" imposed under RCW 48.01.030. Motion, at 11.[4] The Court agrees that, with respect to its invocation of the Fungus Exclusion, Virginia's conduct rises to the level of bad faith. The Court disagrees, however, that Virginia's invocation of the "damage to your work" exclusion constitutes bad faith. As to the remaining grounds underlying Plaintiff's bad faith claim – namely, its invocation of the Progressive Loss Exclusion and its failure to respond to the Second and Third Tenders – genuine issues of material fact preclude summary judgment.

---

[4] RCW 48.01.030 states: "The business of insurance is one affected by the public interest, requiring that all persons be actuated by good faith, abstain from deception, and practice honestly and equity in all insurance matters."

"An action for bad faith handling of an insurance claim sounds in tort." *Safeco Ins. Co. of Am. V. Butler*, 118 Wn.2d 383, 389 (1992). Claims of insurer bad faith "are analyzed applying the same principles as any other tort: duty, breach of that duty, and damages proximately caused by any breach of duty." *Smith v. Safeco Ins. Co.*, 150 Wn.2d 478, 485 (2003). To succeed on such a claim, the insured must show the insurer's breach of the insurance contract was "unreasonable, frivolous, or unfounded." *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 433 (2002). The test is not whether the insurer's interpretation of the policy is correct, but whether the insurer's conduct was reasonable. *Wright v. Safeco Ins. Co.*, 124 Wash.App. 263, 279-80 (2004). Although the question of whether an insurer acted in bad faith is generally a question of fact, *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 165 Wn.2d 122, 130 (2008), "where 'reasonable minds could not differ as to a finding that the adjuster's incuriousness and her failure to inquire further' into the claim constitutes a failure to conduct a reasonable investigation claim, summary judgment is warranted." *Aecon Bldgs., Inc. v. Zurich North America*, 572 F. Supp. 2d 1227, 1236 (W.D. Wash. 2008) (*citing Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 1000 (W.D. Wash. 2006)).

Here, reasonable minds could not differ that Virginia had no basis for invoking the Fungus Exclusion, as the HOAs never complained about the presence of mold or fungus. Defendant was not entitled to deny coverage simply because it may have suspected that mold or fungus damage existed based upon the HOAs' allegations of water intrusion. *Indus. Indem. Co. v. Kallevig*, 114 Wn.2d 907, 917 (1990) ("An insurer does not have a reasonable basis for denying coverage and, therefore, acts without reasonable justification when it denies coverage based upon suspicion and conjecture."). In the absence of any evidence that Defendant conducted an investigation into the presence of mold or fungus before denying coverage

pursuant to the Fungus Exclusion, the Court has little trouble concluding that Defendant acted unreasonably. *See*, *e.g.*, *Aecon Bldgs., Inc.*, 572 F. Supp. 2d at 1237 (finding that insurer acted in bad faith when its adjuster "conducted no investigation at all because she assumed without adequate factual basis" that the claim was not covered).

The Court is not persuaded by Defendant's attempt to characterize its invocation of the Fungus Exclusion as a mere "reservation of rights," or its argument that "[t]here is no evidence that [Virginia] denied [coverage] on that basis." Response, at 11 n.4. The Denial Letter explicitly states that the Progressive Loss and Fungus Exclusions *both* "clearly operates [sic] to bar coverage for all the damage being alleged" by the HOAs, Dkt. # 141 (McGillis Decl., 12 (Denial Letter, at 1)), and Defendant even concedes that the Fungus Exclusion formed a "basis for [its] declination" of coverage. Dkt. # 171 (Response, at 20).

It also is not sufficient to argue, as Defendant does here, that the Progressive Loss Exclusion – and not the Fungus Exclusion – was the "primary basis" of the denial. Indeed, even if the finder of fact were to determine that the Progressive Loss Exclusion bars coverage under the Policy, "an insured may maintain an action against its insurer for bad faith investigation of the insured's claim and violation of the CPA *regardless of whether the insurer was ultimately correct in determining coverage did not exist*." *Coventry Associates v. American States Insurance Co.*, 136 Wn.2d 269, 279-80 (1998) (emphasis added). Because Virginia invoked the Fungus Exception without justification, the Court finds that it has acted in bad faith.

The Court reaches the opposite conclusion with respect to Virginia's invocation of the "damage to your work" exclusion. It is clear that Virginia never actually relied upon that exclusion. At most, Virginia merely reserved its rights with respect to the "damages to your work" exclusion, while simultaneously indicating that it lacked the information necessary to

make a conclusive determination on the issue. Such a reservation of rights does not give rise to a claim of bad faith because Plaintiff cannot demonstrate how it has been harmed by such conduct. *See*, *e.g.*, *Am. Capital Homes, Inc. v. Greenwich Ins. Co.*, Case No. C09-622-JCC, 2010 U.S. Dist. LEXIS 89403, * 13 (W.D. Wash. Aug. 30, 2010) (even bad faith reservation of rights could not support recovery where plaintiff failed to demonstrate resulting harm or prejudice).

As to the remaining grounds underlying Plaintiff's claim of bad faith, genuine issues of material fact preclude summary judgment. Specifically, questions of fact remain as to whether Virginia acted in a manner that was "unreasonable, frivolous, or unfounded" in concluding that the Progressive Loss Exclusion barred coverage. The evidence demonstrates, for example, that Certificates of Occupancy were issued for both the townhomes and condominiums in October of 2003 – months prior to commencement of the Policy – thereby suggesting that the vast majority of construction on the Adelaide Project had been completed as of that time. Dkt. # 1 (Complaint, at ¶ XX). There is no dispute that Ledcor's counsel explicitly told Virginia that, to the extent a date of "substantial completion" could be discerned, that date would have been between August 2003 and November 2003. There also is no dispute that Ledcor entered into a settlement agreement with WSP in which it agreed that the date of "substantial completion" was November 21, 2003. All of this evidence tends to suggest that Defendant was reasonable in concluding that the damage complained of by the HOAs occurred prior to commencement of the Policy, and that the Progressive Loss Exclusion therefore applied.

By contrast, Plaintiff has presented evidence that certain "punch list" work was still being completed at the Adelaide Project as late as April of 2004, and that Defendant was aware of this fact at the time it issued the Denial Letter. Ledcor presents evidence that, notwithstanding this knowledge, Defendant did not investigate the ongoing "punch list" work as a possible cause of

the damages claimed by the HOAs.[5]  This evidence tends to suggest that Defendant was unreasonable in concluding, without further investigation, that the Progressive Loss Exclusion barred coverage.  Because this competing evidence creates factual questions regarding the reasonableness of Defendant's conduct, summary judgment is inappropriate.  Fed. R. Civ. P. 56(a), (c).

      The same result follows with respect to Defendant's failure to respond to the Second and Third Tenders.  A question of fact remains as to whether, under the circumstances presented here, that conduct was "unreasonable, frivolous, or unfounded."   This is particularly true in light of the fact that the Denial Letter specifically states that "there is *no potential for coverage* for this loss . . . [s]hould an action be served."  Dkt. # 141 (McGillis Decl., Ex. 12 (Denial Letter, at 1) (emphasis added)).  The Denial Letter takes for granted that such an action would be served, as it explicitly refers to the HOAs as "plaintiffs."  *Id*.  These statements make clear that, even in the event the HOAs filed a lawsuit, Virginia had no intention of changing its coverage position.  Against that backdrop, the finder of fact might reasonably conclude that Virginia's failure to respond to the Second and Third Tenders was not "unreasonable, frivolous, or unfounded" since such a response would merely reiterate the same definitive coverage position already set forth in

---

[5] Defendant responds that the "punch list" work at issue, some of which is referenced in documents submitted to Virginia by Ledcor's counsel, *see* Dkt. # 141 (McGillis Decl., Ex. 6 (Correspondence and Attachments from Ledcor's Counsel), consisted of service, maintenance, correction, repair, and replacement activity that the parties agreed was to be treated as "completed" as of the inception of the Policy.  *See* Dkt. # 149 (Skinner Decl., Ex. A (Policy, at 3043 and 3059) ("Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.")).  As such, Defendant argues that the "punch list" work at issue, even if ongoing into the term of the Policy, was subject to the Progressive Loss Exclusion.  Dkt. # 171 (Response, at 14).  The Court is unable to resolve this issue on the present Motion, as neither party has presented the Court with sufficient evidence regarding the nature, scope, or extent of the "punch list" work in question.  Accordingly, this issue constitutes a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(a), (c).

the Denial Letter.[6]  Because the finder of fact might reasonably find for either party on this issue, summary judgment is inappropriate.  Fed. R. Civ. P. 56(a), (c).

Because Plaintiff has, at a minimum, established bad faith with respect to Defendant's invocation of the Fungus Exclusion, it is entitled to a rebuttable presumption of harm.  *Am. Best Food, Inc. v. Alea London, Ltd.*, 168 Wn.2d 298, 411-12 (2010).  "The presumptive measure of the insured's damages in a bad faith action is the [amount of the settlement entered into between the plaintiff and the claimant], so long as the amount is reasonable and not the product of fraud or collusion."  *Howard v. Royal Spec. Underwriting*, 121 Wn. App. 372, 374-375 (Wash. Ct. App. 2004) (*citing Besel v. Viking Ins. Co.*, 146 Wn.2d 730 (2002)).  Moreover, "if the insured prevails on [a] bad faith claim," as is the case here, "the insurer is estopped from denying coverage."  *Mutual of Enumclaw Ins. Co. v. Dan Paulson Const., Inc.*, 161 Wn.2d 903, 920 (2007).

Here, Plaintiff settled the Underlying Action for $1,270,600.00, and the state court determined that the settlement was reasonable and not the product of collusion or fraud.  Dkt.# 40 (Samuelson Decl., Ex. 2 (Order Granting Motion for Reasonableness Determination)).  As such, the presumptive amount of Plaintiff's damages is $1,270,600.00.  Because Defendant acted in bad faith, it is estopped from denying coverage with respect to that settlement.  *Mutual of Enumclaw Ins. Co.*, 161 Wn.2d at 920.  However, because there is evidence that Plaintiff recovered some portion of the $1,270,600.00 settlement from subcontractors and other insurers, further proceedings are required to determine whether and to what extent Plaintiff's presumptive

---

[6] Although there is no dispute that Defendant violated Washington's Administrative Code by not responding to the Second and Third Tenders, *see, e.g.*, Dkt. # 167 (Young Decl., Ex. A (Heinze Expert Rpt., at 17)), those violations at most establish the duty and breach elements of Plaintiff's bad faith claim.  In order to prevail on such a claim, the plaintiff must also establish, among other things, that the defendant's conduct was "unreasonable, frivolous, or unfounded."  *Overton*, 145 Wn.2d at 433.

damages should be reduced to reflect Plaintiff's actual losses.

## C. Breach of Insurance Contract

Plaintiff argues that it is entitled to summary judgment on its claim that Defendant breached the Policy by failing to defend and indemnify it in connection with the Underlying Action. Defendant argues that it owed no contractual duty to the Plaintiff, and that, in any event, Plaintiff cannot established that it was harmed as a result of the alleged breach. Genuine issues of material fact preclude summary judgment on this claim.

The elements of a cause of action for breach of contract are: (1) the existence of a legal duty under the contract; (2) breach of that duty; and (3) damages proximately caused by the breach. *See Northwest Insep. Forest Mfrs. V. Dep. of Labor & Indus.*, 78 Wn.App. 707, 712 (Wash. Ct. App. 1995).

Although Defendant acted in bad faith by invoking the Fungus Exclusion without justification, it does not necessarily follow that Defendant also breached the Policy by failing to defend and indemnify Plaintiff. Indeed, for the reasons set forth above, the finder of fact might reasonably conclude that the Progressive Loss Exclusion barred coverage of the claims at issue, thereby negating Defendant's contractual obligations to defend and indemnify. Moreover, Plaintiff has presented no evidence to substantiate its assertion that the "defects or property damage [in question] occurred ***during*** Virginia's policy period." Dkt. # 168 (Plaintiff's Motion 2, at 15) (emphasis added). Indeed, the fact that some "punch list" work may have been ongoing into the term of the Policy says nothing about whether that work was defective, let alone that it was the cause of – or even related to – the damages claimed by the HOAs. In the absence of any evidence linking the "punch list" work to the claims in the Underling Action, Plaintiff is not entitled to summary judgment on its contract claim. In order to prevail on this claim at trial,

Plaintiff will need to come forward with, among other things, evidence that the damages at issue in the Underlying Action occurred within the term of the Policy.

Defendant also argues that, pursuant to the Policy's "Other Insurance" provision – which provides that Virginia had no obligation to defend Plaintiff unless the damages at issue exceed the limits of "[a]ny other primary insurance available to you," Dkt. # 149 (Skinner Decl., Ex. A (Policy, at 3044)) – it was not contractually obligated to defend Plaintiff in the Underlying Action. Although Defendant argues that Plaintiff was named as an additional insured on the policies of one or more of its subcontractors, it has presented no evidence as to whether the other insurance policies in question constitute "primary insurance." Additionally, to the extent the American Home policy constitutes "primary insurance," that policy contained an "Other Insurance" provision that is substantially similar to the one contained in the Policy. Dkt. # 151 (McGillis Decl., Ex. 1 (American Home Policy, at ¶ 9). The commonality of these provisions renders them mutually repugnant and void as to each other. *Polygon NW v. Am. Nat'l Fire Ins. Co.*, 143 Wn. App. 753, 778 (2008). As such, the Policy's "Other Insurance" provision does not operate to excuse Virginia's defense obligations thereunder.

Defendant also argues that, in any event, Plaintiff's contract claim must be summarily dismissed because Plaintiff cannot establish the element of damages. Specifically, Defendant argues that American Home's defense and settlement of the Underlying Action on Ledcor's behalf precludes a finding that Lendcor was damaged. *See* Dkt. # 171 (Response, at 17-18). The Court disagrees. "The substantive law in Washington permits recovery by an insured even if he or she has been fully reimbursed." *Allstate Ins. Co. v. Hughes*, 358 F.3d 1089, 1094 (9th Cir. 2004). Here, Plaintiff seeks to recover the amount it paid to settle the Underlying Action, together with the insurance premiums it paid to Virginia under the Policy. The amount of

Plaintiff's contract damages, if any, is an issue most appropriately left for resolution at trial. Fed. R. Civ. P. 56(a), (c).

D. Washington's Consumer Protection Act

Plaintiff next argues that it is entitled to summary judgment on its claims pursuant to the Washington Consumer Protection Act ("CPA"). To prevail on such a claim, a plaintiff must show: (1) an unfair or deceptive act or practice; (2) in trade or commerce; (3) which affects the public interest; (4) that injured the plaintiff's business or property; and (5) that the unfair or deceptive act complained of caused the injury suffered. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780 (1986) (hereinafter, the "*Hangman* Factors").

1. Unfair or Deceptive Trade Practice

The Washington Administrative Code ("WAC") contains specific consumer protection standards for the insurance industry, and the regulations contained therein set forth various conduct that constitutes unfair or deceptive acts or practices. WAC 284-30-330. A violation of WAC 284-30-330 may constitute a *per se* violation of the CPA, assuming the other *Hangman* Factors are also met. *Truck Ins. Exchange v. Vanport Homes, Inc.*, 147 Wash.2d 751, 764 (2002). An insurer's bad faith also constitutes a *per se* unfair trade practice. *RSUI Indem. Co. v. Vision One, LLC*, Case No. C08-1386RSL, 2009 U.S. Dist. LEXIS 118425, *8-9 (W.D. Wash. Dec. 18, 2009). Here, the Court has already determined that Defendant acted in bad faith by denying coverage on the basis of the Fungus Exclusion. As such, that conduct constitutes a *per se* unfair trade practice. *Id.*[7]

Plaintiff claims that Defendant committed additional *per se* unfair trade practices through its violation of six specific provisions of WAC 284-30-330, which states in relevant part as

---

[7] Defendant's bad faith invocation of the Fungus Exclusion also constitutes a *per se* unfair trade practice pursuant to WAC 284-30-330(4), discussed below.

follows:

> The following are hereby defined as unfair methods of competition and unfair or deceptive acts or practices of the insurer in the business of insurance, specifically applicable to the settlement of claims:
>
> (1) Misrepresenting pertinent facts or insurance policy provisions.
>
> (2) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies.
>
> (3) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies.
>
> (4) Refusing to pay claims without conducting a reasonable investigation.
>
> (5) Failing to affirm or deny coverage of claims within a reasonable time after fully completed proof of loss documentation has been submitted.
>
> \* \* \*
>
> (13) Failing to promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.

WAC 284-30-330.

Plaintiff argues that Defendant violated WAC 284-30-330(1) by "misrepresenting" that the Adelaide Project was complete prior to December 2003 and by "reading into the policy the term 'substantial completion.'" Dkt. # 168 (Motion, at 18). Plaintiff argues that Defendant violated WAC 284-30-330(2), (3) and (5) by "waiting over six months to respond to Ledcor's original tender of defense and by ignoring Ledcor's re-tenders sent in 2007 and 2008." *Id*. Plaintiff argues that Defendant violated WAC 284-30-330(4) by failing to investigate the date on which the Adelaide Project was completed. *Id*. Plaintiff also argues that Virginia violated WAC 284-30-330(13) by "failing to promptly respond and provide a reasonable explanation" following Plaintiff's submission of the Second and Third Tenders. *Id*.

As to Plaintiff's claim under WAC 284-30-330(1), the Court finds that Defendant did not

misrepresent the date that the Adelaide Project was completed, and that it did not read the term "substantial completion" into the Policy. As noted above, Defendant took the position that the damages complained of in the Underlying Action had occurred on or before the date of "substantial completion" previously represented to it by Plaintiff's own counsel. Plaintiff has provided no evidence to substantiate the bizarre assertion that Defendant's subsequent reliance on that date constitutes a "misrepresentation."

The Court finds that Defendant did not violate WAC 284-30-330(2) in connection with its handling of the original tender. WAC 284-30-330(2) requires that the insurer "acknowledge and act reasonably promptly" in response to correspondence relating to an insurance policy. Because Virginia acknowledged Plaintiff's original tender within days of its submission, *see* Dkt. # 141 (McGillis Decl., Ex. 1 (Notice of Claim dated August 11, 2005)); *id.*, Exs. 3 and 5 (Email Correspondence dated August 16-17, 2005), and requested relevant information relating to the HOAs' potential claims shortly thereafter, *id.*, it acted "reasonably promptly."

The Court reaches the opposite conclusion as to Virginia's handling of the Second and Third Tenders. Indeed, there is no dispute that Defendant never responded to the Second and Third Tenders – failures that Defendant attempts to characterize as a "good faith mistake," Dkt. # 171 (Response, at 18), a "procedural misstep," Dkt. # 166 (Motion, at 10), and "a technical violation of the Washington claims handling regulations." Dkt. # 148 (Response, at 10). However one chooses to characterize this conduct, there is no question that Defendant failed to act "reasonably promptly" as to the Second and Third Tenders. Defendant's failure to do so constitutes a violation of WAC 284-30-330(2).[8]

---

[8] Defendant did not violate WAC 284-30-330(3) through its failure to respond to the Second and Third Tenders, as those failures demonstrate a deficiency in the manner in which defendant *responded* to particular claims – not necessarily the manner in which Defendant *investigated*

ORDER - 17

As to Plaintiff's claim under WAC 284-30-330(4), genuine issues of material fact (detailed above) preclude summary judgment on the question of whether Defendant conducted a reasonable investigation into the timing of the damages claimed in the Underlying Action.

As to Plaintiff's claim under WAC 284-30-330(5), the Court finds that Defendant issued the Denial Letter within a reasonable amount of time. Indeed, Defendant made numerous requests for information – both from Plaintiff and various third-parties – between the time it acknowledged the original tender and the time it issued the Denial Letter. *See* Dkt. # 141 (McGillis Decl., Exs. 3, 4, 5, 7, 10 (Emails dated August 16, 2005, August 17, 2005, September 6, 2005, and February 6, 2006)). Notwithstanding its various requests for information, there is no dispute that Plaintiff never provided Defendant with relevant and responsive information – namely, subcontract agreements and additional insured endorsements. *Id*., Ex. 3 (Email dated August 16, 2005, Requesting Information)); Dkt. # 176 (Reply, at 10 (acknowledging that Plaintiff "never provided the information Virginia requested")). Moreover, after requesting the documents in question, Defendant's adjuster informed Plaintiff's counsel that he would "be back in contact ***after*** [***he receives***] the policy and ***all*** ***of*** ***the*** ***documentation*** ***on*** ***this*** ***project***." Dkt. # 141 (McGillis Decl., Ex. 5 (Email from Virginia to Ledcor's Counsel dated August 17, 2005) (emphasis added)).

In light of the fact that Defendant spent time waiting for documents it requested but which Plaintiff never provided, and given the complexity of the claims at issue (i.e., multi-party litigation involving the presence of numerous subcontractors and insurers), the Court finds that six months was a reasonable amount of time for Defendant to wait before issuing the Denial Letter, and that the timing of that correspondence does not violate WAC 248-30-330(5).

---

those claims. Nor do those failures constitute a violation of WAC 284-30-330(5) or (13), as Defendant had previously stated its coverage position in the Denial Letter.

\* \* \* \*

Because Plaintiff has established two *per se* unfair trade practices – i.e., Defendant's bad faith assertion of the Fungus Exclusion and its violation of WAC 284-30-330(2) – the Court now must consider whether Plaintiff has satisfied the remaining *Hangman* Factors.

2. Remaining *Hangman* Factors

The second *Hangman* Factor is established as a matter of law because the subject matter of this action involves an insurance contract. *Bryant v. Country Life Ins. Co.*, 414 F. Supp. 2d 981, 1002-03 (W.D. Wash. 2006). The third *Hangman* Factor also is established as a matter of law since CPA claims "alleging unfair insurance claims practices meet the public interest element because RCW 48.01.030 declares that the business of insurance is one affected by the public interest." *Id.* (*citing Anderson v. State Farm Mut. Ins. Co*., 101 Wn. App. 323 (Wash Ct. App. 2000)). However, as to the last two *Hangman* Factors – injury to business or property and causation – Plaintiff has not made a sufficient showing to warrant summary judgment. Specifically, genuine issues of material fact remain as to the extent of the damages suffered by Plaintiff and the causal link between Defendant's CPA violations and those damages. These issues are most appropriately left for resolution at trial. Fed. R. Civ. P. 56(a), (c).

E. Insurance Fair Conduct Act

Finally, Plaintiff claims that it is entitled to summary judgment pursuant to the Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015. The IFCA states, in pertinent part, that "[a]ny first party claimant to a policy of insurance who is unreasonably denied a claim for coverage or payment of benefits by an insurer may bring an action . . . to recover actual damages sustained together with the costs of the action, including reasonable attorneys' fees and litigation costs." *Id.*

The IFCA became effective on December 6, 2007 – nearly two years after Defendant's issuance of the Denial Letter and between Plaintiff's submission of the Second and Third Tenders. IFCA is not retroactive. *See Malbco Holdings, LLC v. Amco Ins. Co.*, 546 F. Supp. 2d 1130, 1133 (E.D. Wash. 2008). The operative date in determining whether the IFCA applies is the date that a claim for coverage is denied. *Pacific Coast Container, Inc. v. Royal Surplus Lines Ins. Co.*, Case No. C08-0278MJP, 2008 U.S. Dist. LEXIS 108426, *24 (W.D. Wash. July 8, 2008). Here, because Defendant denied coverage on February 21, 2006, the IFCA does not apply, regardless of whether Defendant subsequently failed to respond to the Second and Third Tenders. *Id.* Accordingly, Plaintiff's IFCA claim is dismissed.

## IV. **CONCLUSION**

The Court, having reviewed the pleadings, the parties' respective motions for summary judgment and responses and replies thereto, along with the remaining record, does hereby ORDER:

(1) Plaintiff's Motion for Partial Summary Judgment Against Defendant Virginia Surety Company, Inc. for Insurance Bad Faith (Dkt. # 140) is GRANTED to the extent of establishing liability for Defendant's bad faith invocation of the Fungus Exclusion, and otherwise DENIED;

(2) Plaintiff's Motion for Summary Judgment Against Defendant Virginia Surety Company, Inc. for Breach of Insurance Contract, Violations of Washington's Consumer Protection Act, and Violations of the Insurance Fair Conduct Act (Dkt. # 168) is DENIED; and

(3) Defendant's Motion for Summary Judgment (Dkt. # 166) is GRANTED with respect to Plaintiff's IFCA claim, and otherwise DENIED.

Dated this 9th day of December 2011.

RICARDO S. MARTINEZ
UNITED STATES DISTRICT JUDGE